### JAMES AND RICHARD LOINES *v.* JAMES PHILLIPS.

The security in a bond for the assignment and delivery of property, by a person applying for the benefit of the insolvent law, is liable for the creditor's whole debt, although the insolvent had not property to assign.

THIS case was adjourned here for decision from Ross county.  It was an action of debt upon a bond, executed by the defendant as security for Stephen Loines, who, being arrested upon mesne pro-

cess, applied for the benefit of the insolvent act, and gave the bond in question for the making a schedule and delivering up of all his property. The point presented for decision was agreed between the parties as follows:

" This cause is reserved for the special session at Columbus on an inquiry of damages. If the court should be of opinion that the insolvency of the defendants, or the amount and value of his property, can not be given in evidence, in mitigation of damages, then the plaintiffs are to have judgment for four hundred and thirty-seven dollars and eighty-two cents, and for costs, twelve dollars and sixty-six cents, with interest from November 15, 1821; otherwise the cause is to be sent to the Supreme Court of Ross county for inquiry of damages."

LEONARD, for plaintiff.

DOUGLAS, and BRUSH, and FITZGERALD, for defendant.

By the COURT:

The condition of the bond is, that the petitioner shall assign all his property for the benefit of his creditors. It is *the [173 general policy of our laws to hold the body of the debtor as a security for the payment of the judgment to be recovered. The debtor was compelled to submit to imprisonment, or find security that he would faithfully assign all his property for the benefit of his creditors. When the security is obtained the body is discharged, and the bond substituted for it. This court has nothing to do with the justice or policy of the law, which gives the creditor his power over the body of the debtor. It assumes the principle that such rigor is necessary to procure a surrender of property fraudulently concealed by the debtor. It is with another department of the government to say whether the punishment of individuals, upon presumption of fraud, would not be more justly inflicted, as in other offenses, by the public, after conviction, than by an interested and perhaps exasperated creditor before. Our business, however, is to expound and not make laws. The effect of this bond is the discharge of the prisoner, and he has had the full benefit of it. The petition and schedule exhibited furnish no legal presumption of the truth of either. There is not even the affidavit of the applicant that they are so. Between the filing and

the final hearing of the petition the inventory can be enlarged or diminished at pleasure of the petitioner. If both are untrue no penalty attaches, nor does any power exist to punish him. He can, with perfect impunity, whether solvent or not, procure his discharge from arrest, and turn his creditor round to his remedy upon his bond. And he is directly interested in doing so if the amount of his property can only be recovered for the breach. The very fact of the applicant declining to avail himself of a final discharge, under the law, raises a strong presumption, not only that his principal object was abstractedly a release from imprisonment, but that he was, at the same time, not insolvent. Between the filing of the petition and final hearing, the applicant may have acquired property which would render him criminal to make affidavit of the truth of his schedule. The petitioner himself, and he only, is able to ascertain, with perfect certainty, the true state of his property. He may have property in other states or countries. This may consist of lands, stock, vessels at sea, choses, money, the extent or amount of which can not be known to others. Shall the voluntary 174] omission of the principal in the bond *compel the creditor to rely upon vague and uncertain evidence of the debtor's property, when it is for his interest to seal in secrecy his effects, and derive a direct advantage to himself by the abuse of the law in the first instance, and afterward by his own concealment and fraud? If the obligors in the bond are not liable beyond the amount of property of the principal, there would be a clear inducement to abuse the law and commit frauds. The court are undoubtedly authorized to put such a construction upon this bond and the damages to be assessed for a breach of its condition, as will prevent the debtor from taking advantage of his own wrong to the injury of the creditor, who is fairly pursuing the remedy the law gives him for the security and satisfaction of his debt. If damages are not recovered beyond the amount of the property of the insolvent upon the dismissal of the petition, the creditor would certainly lose the security of the person of the debtor, which the law, in the first instance, gave him, and this by the voluntary, if not fraudulent act of the insolvent. A part of his legal right would be lost without his own default and without consideration. Damages are defined to be a recompense to the plaintiff for the wrong done him by the defendant. Coke Lit. 572, a. The wrong here is procuring the body to be released under color of

law, and then neglecting or refusing to assign all his property for the benefit of his creditors.  The creditor has a right to seize the body and detain it, and after the judgment to take the land and goods for its satisfaction.  He has lost one part of his remedy altogether, and can receive no equivalent, unless he can recover damages beyond the amount of property of the principal in the bond. It has been the uniform practice of this court, under the statute, if the defendant is imprisoned under a *capias ad respondendum* to take the debt; if under a *ca. sa.* the judgment, as the measure of damages to which the obligee is entitled.  This rule was deemed essential to prevent an abuse of the statute as well as to guard the legal rights of the creditor.  Members of the court who have succeeded to the bench have sometimes doubted its correctness; but the decisions have, nevertheless, been uniform by a concurrence of a majority of the court.  There appears no good grounds for making, at this late period, an innovation upon the settled practice.  Judgment for the plaintiff, according to the agreement of the parties.